63 So.2d 738

**McCLATCHEY v. GUARANTY BANK & TRUST CO., Inc. et al.**

No. 40623.

Feb. 16, 1953.

J. Minos Simon, Lafayette, for plaintiff-appellant.

Davidson & Meaux and Joseph J. Piccione, Lafayette, for defendants-appellees.

LE BLANC, Justice.

Plaintiff appealed from a judgment which sustained an exception of want of proper verification of his petition. Under the ruling made he was allowed ten days in which he might amend the verification. This he refused to do evidently preferring to appeal from a judgment which would have the effect of dismissing his suit. After judgment was rendered and signed he erroneously took and perfected his appeal to the Court of Appeal, First Circuit, and that Court finding itself without appellate jurisdiction because of the amount in dispute, namely the sum of $2071, properly transferred the appeal to this court. 55 So. 2d 242.

The question presented involves the interpretation of the Pleadings and Practice Act now incorporated in the LSA-Revised Statutes of 1950 as 13:3601 and especially of those provisions relating to the verification of a petition or answer.

Plaintiff's suit is based on a check which he alleged was turned over to Joseph Walters, one of the defendants, without any consideration having been given for it. In his petition he alleges the following facts: That on January 14, 1950, he executed a document, purporting to be a check, on a printed check form supplied to him by the First National Bank of Lafayette, Louisiana, payable to the order of "Cash", in the sum of $2071; that he never intended the document to be or become a negotiable instrument and to make sure that it would not be so converted, he inscribed the word "Hold" across its face.

That sometime during the year 1950 he opened a banking account with the Guaranty Bank & Trust Co. of Lafayette, Louisiana; that on December 30, 1950, that bank issued to him a statement showing that he had a balance of $27.81 and that on January 20, 1951, he deposited the sum of $6900.

That January 20, 1951 was a Saturday and as it usually does on Saturdays, the bank closed its doors at 12 o'clock noon and therefore no one but the agents of the bank knew that he had made such deposit.

That on the morning of Monday, January 22, 1951, defendant Joseph Walters, presented to one Joe Arceneaux, teller, employed by the Guaranty Bank & Trust Co., the document hereinbefore mentioned, "but the same had been deliberately altered and changed by the said Joseph Walters and Marcel Duhon (the latter also made defendant) or by some one under their supervision and direction," in that the word "Hold" had been completely removed by the use of ink eradicator, lines had been horizontally drawn through the printed words "The First National Bank" and immediately above these words, the words "Guaranty Bank & Trust Co." had been written in some unknown handwriting and

that in addition the "O" of the figures 1950 as part of the date had been changed by a crudely drawn figure "1" through it to make the date read January 14, "1951" instead of January 14, "1950" as originally written.

That the alterations and changes in the document were readily obvious to the most casual glance and were observed or should, with the exercise of reasonable care, have been observed by the said Arceneaux while acting within the course and scope of his employment with the Guaranty Bank & Trust Co., (also made defendant) but in spite of the fact that it was obvious that the document had been forged by Joseph Walters and Marcel Duhon, he (the said Arceneaux) without further inquiring into its genuineness, honored the same.

He then alleges that because of the tortious conduct of the said Joseph Walters and Marcel Duhon, together with the intentional co-operation, and, in the alternative if not intentional co-operation, then the gross negligence of Joe Arceneaux, he has sustained a loss of $2071.

■ All of the foregoing allegations of fact are made unequivocally and are therefore presumed to be based on the petitioner's personal knowledge of those facts. Only one allegation appears to have been qualifiedly made and that is to the effect that he "believes, and therefore avers," that the information that he had made a deposit with the Guaranty Bank & Trust Co. was given to Joe Walters and Marcel Duhon by some one working for that bank

and consequently he sustained his loss through the co-operation of one of its employees.

Plaintiff's petition is signed by his attorney and is verified as follows:

"State of Louisiana
"Parish of Lafayette

"George C. McClatchey, being duly sworn, deposed and said that he is the plaintiff in the foregoing petition, and that all of the allegations of fact therein contained are true and correct, to the best of his knowledge, information, and belief.

"/s/ G. C. McClatchey

"Sworn to and subscribed before me, Notary Public in and for the Parish of Lafayette, State of Louisiana, this 30th day of July, 1951.

"/s/ J. Minos Simon
"Notary Public."

The provisions of the Pleadings and Practice Act, LSA–R.S. 13:3601, insofar as they are pertinent to a discussion of the issue involved in this case are as follows: "(1) The plaintiff in his petition shall state his cause of action articulately, that is to say, he shall, so far as practicable, state each of the material facts upon which he bases his claim for relief in a separate paragraph, separately numbered. The petition shall be in all cases verified as hereinafter provided." This provision is followed by those relating to the form of the answer of the defendant which requires him to either admit or deny, specifically,

each material allegation or fact contained in the petition, reserving to him the right, under existing practice, to plead special defenses and also the right to deny upon lack of sufficient information in order to justify a belief in regard to the allegation in question but requiring in such case that the denial "must be expressly so qualified." These provisions also require that the answer, both as to admissions and denials be verified. Provisions are then made for presenting and obtaining a rule for judgment on the pleadings in case where the same may be justified.

The provisions concerning verification are as follows: "The petition or answer as the case may be shall be verified by the plaintiff or the defendant, if a natural person or a member of the firm if a partnership, or in the case of a corporation, by the president, vice-president or other managing officer thereof; provided, however; (a) The joint petition or answer of several plaintiffs or defendants may be verified by any one of said joint plaintiffs or defendants. *The verification in the case of parties shall consist in an affidavit to the effect that all of the allegations of fact made in the petition or answer are true except as to those allegations expressly made on information and belief, and that as to these, the affiant believes them to be true.* (b) The petition or answer may be verified by the attorney of the party or parties in all cases." (Emphasis supplied.)

In considering the provisions which govern the manner in which the verifica-

tion of the petition shall be made, it seems clear that the statute contemplates that the petition might contain at least two types of allegations: (1) Those of facts which are within the petitioner's personal knowledge and (2) Those he only knows from information imparted to him and which he believes to be true. That is why in cases where the petition partakes of allegations of both kinds and the verification is made by a "party" as in this case, the law requires that it consist in an affidavit to the effect that all allegations are *true*, except those expressly made on information and belief, and it is only as to the latter can he state that he *believes* them to be true. And there is good reason why the affidavit should be thus divided in cases of this kind when we come to consider the purpose intended by the pleading act.

The purpose was primarily to restrict the issues in a law suit as far as practicable, to confine the testimony and the evidence to the issues and thus simplify the trial of the case; and to these ends the law requires verification by affidavit in order to insure the good faith of the pleader in his allegations.

In Burmester v. Moseley, 33 S.C. 251, 11 S.E. 786, 787, the Supreme Court of South Carolina quoted with approval from a former case, the following statement:

" 'The great object enforced by the statute in prescribing what is essential to verification is to make it appear

on the face of a pleading and its verification what matters therein contained are set forth according to the knowledge of the party making such pleading, and what matters are stated according to information and belief only. Any mode of verification that does not accomplish this end defeats the object of the statute, and accordingly must be held defective as to matters of substance.' "

Somewhat significant in this connection, we might say, is the following statement made by this court in Clark v. Illinois Central R. Co., 134 La. 440, 64 So. 281, 282, after it had commented on the use of discretion by the district judge in having permitted counsel for defendant to cure an oversight in verifying an answer: "The district judge, we have seen, authorized the oversight to be cured by giving permission to that effect. We do not think we should recall the exercise of his discretion. *None the less, we will mention that the statute will have to be enforced as written to accomplish the purpose intended."* (Emphasis supplied.) This is a rather positive statement of what the policy of the court would be and served as a notice of what course it would follow with regard to the statute in the future.

The importance of the verification and the necessity for it to conform to the requirements of the statute is also stressed in a statement found in 71 C.J.S., Pleading, § 359 which is as follows: "The verification should, in general, clearly identify the allegations to which it refers; it must be direct and unequivocal as to the facts sworn to, and be in such form or be so sufficiently definite as to subject the party making it to a prosecution for perjury if the statements sworn to prove to be false; * * *." Girhard v. Yost, 344 Ill. 483, 176 N.E. 899, 901, is a case cited as authority for that statement, and this is what the Supreme Court of Illinois stated on this point:

"In his case the entire petition is on direct statements of fact and contains no allegations on information and belief. The verification goes to the entire petition. The affidavit is on information and belief. *Such an affidavit is not sufficient to afford the basis for a prosecution for perjury in case of its falsity.* Certain of the statements made were clearly within the knowledge of the petitioner and should have been sworn to positively, as, for example, the allegation of the petition that the petitioner is an elector of the county of Jasper. Certain allegations of the petition were necessarily on information and belief, and the affidavit may properly state as to such facts that they are on information and belief and that the petitioner believed them to be true. The verification here would not be sufficient in case of a bill in chancery, and therefore cannot under the Elections Act

be held sufficient." (Emphasis supplied.)

The idea of requiring the verification of a petition to be sufficiently definite as to render the party making the affidavit subject to a conviction for perjury if the facts he swears to are not true is not unknown to our jurisprudence. As far back as the case of Reboul's Heirs v. Behrens, 5 La. 79, this court stated the same proposition in clear and unmistakable terms. It is true that the case was one which originated long before the enactment of the Pleading and Practice statute, but by analogy, we consider it appropriate authority on the issue we are discussing.

The demand was one for an injunction in which cases, as prescribed by Art. 304 of the Code of Practice, the party applying for the injunction must state in his petition, "under oath, the facts which, according to his belief, render an injunction necessary, * * *." The plaintiff in taking the required oath swore "that the material facts and allegations in the said petition are true and correct, to the best of his knowledge." In holding the affidavit to be insufficient, the court stated:

"In our opinion, the affidavit for an injunction, ought to be such as to submit the party to the penalties of perjury, if the facts sworn to appear to be otherwise. He should swear to avoid these penalties, that the facts stated, as within his knowledge, are true, and those not stated as within

his knowledge he believes to be true. * * *."

That, it appears to us is exactly what our Pleading and Practice Act requires the pleader to do in every case by verifying his petition or answer and consequently the statement by the court is applicable here even though the case was one involving verification of a petition for injunction. We observe that it was cited as authority by the Supreme Court of Indiana in the case of Henderson v. Reynolds, 168 Ind. 522, 81 N.E. 494, 11 L.R.A., N.S., 960, in which the verification to the complaint in an action for the appointment of a receiver which stated that "all the statements in the complaint are true to the best of his knowledge and belief" was held to be insufficient.

In the case before us the affidavit sworn to and subscribed by the plaintiff makes no distinction between those allegations of his petition which are positive and direct and are based on his own personal knowledge, and the one which is apparently made on information and which he alleges only on belief. Moreover the oath is not one under which he could, in our opinion, be subjected to a prosecution for perjury. It necessarily has to be held defective and insufficient.

The case of Granier v. Bourgeois, La. App, 188 So. 423, cited as authority by counsel for appellant is not inconsistent with the ruling herein as the verification in that case was not made by one of the "parties" to the suit but by the attorney for

the plaintiffs, and besides, it was a verification to a supplemental petition filed under order of the court.

In the present case the point should also be stressed that the district judge did not at first dismiss plaintiff's suit. He sustained the exceptions and allowed counsel ten days in which to amend the verification. Counsel refused to amend and chose to contest the judge's ruling on appeal when judgment was entered and signed dismissing the suit after the ten day period had expired. As the judge's ruling is found to be correct it follows that plaintiff must suffer the dismissal of his suit as was properly decreed in the court below.

For the reasons stated, the judgment is affirmed.