742 So.2d 1014 (1999)
Donna Martinez, Wife of/and Elvin MARTINEZ
v.
Doyle RENO d/b/a Reno Construction.
No. 99-CA-114.
Court of Appeal of Louisiana, Fifth Circuit.
September 15, 1999.
*1015 Albert J. Derbes, III, Albert J. Derbes, IV, Eric J. Derbes, Metairie, Louisiana, Attorneys for Appellant.
Timothy S. Marcel, Boutte, Louisiana, Attorney for Appellee.
Panel composed of Judges H. CHARLES GAUDIN, SOL GOTHARD and MARION F. EDWARDS.
EDWARDS, Judge.
Mr. and Mrs. Elvin Martinez appeal a judgment of the district court granting them judgment in the amount of $7,040.23. For the following reasons, we reverse in part and affirm in part.
Mr. and Mrs. Martinez filed suit against Doyle Reno, d/b/a Reno Construction ("Reno"), alleging that Reno breached its contract to build a home for the Martinezes, requesting damages to correct substandard work, and to finish the project. They also asked for reimbursement for all reasonable legal fees and costs plus punitive damages, if the court determined that defendant was arbitrary and capricious, damages for mental anguish and distress, loss of use and inconvenience plus out of pocket expenses including interest on their loan and finance charges "and all other attendant costs and fees" regarding the delay in closing. Reno answered and filed a reconventional demand, alleging that appellants had made numerous changes to the original specifications and had refused to pay the fourth draw on the contract, that there were unpaid bills for construction materials, and that Reno was entitled to payment for labor and materials as well as for breach of contract.
Trial was held over a 3-day period. The court granted judgment in favor of plaintiffs and against the defendants in the amount of $7,040.23. Both parties filed motions for appeal. Only the Martinezes have proceeded with their appeal.
Appellants assert that they do not dispute the factual findings of the trial court, but rather appeal on the basis that the court applied the incorrect legal standard in awarding damages. However, as we understand their brief, they do challenge certain factual findings which the trial court made relative to the method of computing their losses.
In its reasons for judgment, the court made the following findings:
(1) Plaintiffs agreed to pay $35.00 a square foot for their home, and at that price the job was underbid; both parties shared responsibility for various of the disagreements;
(2) Plaintiffs realized that defendant's bid was rock-bottom pricing for construction.
(3) Although there were some deficiencies which were the fault of defendant, there were others which were not. The sinking slab in the den appeared to be the result of the addition of fill because of misplaced earlier fill, the May 7, 1995 flooding, and the lack of settling time due to the time constraints of beginning construction. The framing discrepancy in the den roof appeared to be a problem with the design.
(4) The delays in construction were not all attributable to the defendant.
(5) At the point when defendant simply ceased to work and refused to accept the certified letters of the plaintiffs, plaintiffs were forced to hire a new contractor.
The court went on to find that plaintiffs received a 3299.5 square foot home. Toward this amount, plaintiffs paid $70,260.00 to the defendant, excluding $965.00 paid for fill dirt, $68,273.00 to Hyman L. Bartolo Contractors, $12,661.82 for reimbursements for work not performed, $20,587.91 *1016 for additional material and unpaid balances/bills, and $1,961.00 for repairs excluding concrete patch cost and 50% of roof support repair, all for a total of $173,743.73. Finding that the minimum pricing of the home would have been $50.00 per square foot as per the testimony at trial, the court determined that the home would have cost $164,975.00; therefore, plaintiffs overpaid by $8,768.73. An additional $4000.00 for interim interest, loss of rental income, and travel expenses, was granted, which amount represented only a portion of the award requested because the plaintiffs were partially at fault for the delays.
The court also found that the den addition added 266.5 square feet to the total square footage. At $35.00 per square foot, the cost would be $9,327.50, of which defendant received $3600.00. The court determined that the defendant was entitled to a credit of $5,727.50.
Under La. Civil Code art. 2769, if an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract. The appropriate measure of damages as a result of a breach of a contract to build under C.C. art. 2769 is what it will take to place the homeowner in the position he deserved to be in when the building was completed. Hageman v. Foreman, 539 So.2d 678, 681 (La.App. 3rd Cir.1989); Hebert v. McDaniel, 479 So.2d 1029, 1034 (La.App. 3rd Cir.1985). The owner is entitled to "the cost of repairs necessary to convert the unsound structure to a sound one or the amount paid to remedy the defect." Nicholson & Loup, Inc. v. Carl E. Woodward, Inc. 596 So.2d 374, 392 (La. App. 4th Cir.1992), citing Manzanares v. American International Forest Products, Inc., 389 So.2d 1142, 1146 (La.App. 3rd Cir.1980).
In the present case, it is difficult (as the trial court found) to calculate the losses resulting from defendant's non-compliance under C.C. art. 2769. The determination of the true amount plaintiffs paid to remedy the defects so as to place them in the position they deserved to be in when the building was completed is made complex by a variety of factors. As the trial judge found, some of the problems with the building were the fault of the contractor, and some the fault of the plaintiffs. Further, the evidence indicates that some problems which necessitated corrections were due to the design of the house (as well as to other causes entirely, such as the flood). In addition, plaintiffs engaged a contractor to finish the house at a higher price than originally bargained with Reno; further, the house as finished is larger than originally contemplated and contracted for by the parties.
The district court found that the house was completed by a contractor whose bidding and construction practices are very different from the defendant's, so that "any attempt to compare the price charged and the finished product of the new contractor to the original price and product of the defendant strikes me as comparing apples to oranges." Reasons For Judgment. The court found the entire job was underbid by the defendant, and that minimum pricing for this type of job was at $50.00 per square foot. "Therefore, the replacement contractor who completed the home provides construction which presumably results in a better quality finished product than a contractor who charges $35.00 per square foot. The defendant should not be held liable for the higher cost of a finished product which has a better quality than what was contemplated under the original contract." Reasons For Judgment.
Accepting these findings as true, and considering all the factors in this case, including: the finding of trial court that the project was underbid, that defendants ultimately got a better quality finished product than originally bargained for, that appellants were partially at fault for some *1017 of the delays, and that some of the deficiencies were not the fault of the contractor, we cannot say that the trial court was manifestly erroneous in finding that the plaintiffs overpaid by $8,768.73.
With regard to the failure of the court to award damages for mental anguish, we note that where a trial court's judgment is silent with respect to a party's claim, it is presumed the trial court denied the relief sought. Livingston Downs Racing Ass'n, Inc. v. State Through Edwards, 94-1514 (La.App. 1st Cir. 4/7/95), 653 So.2d 1311, 1313; Debs v. Sunrise Homes, Inc., 430 So.2d 110, 113 (5th Cir.1983) writ denied 437 So.2d 1153. Such damages are, however, recoverable on contracts to build. See Taylor v. Burton, 97-1348 (La.App. 3rd Cir. 3/6/98), 708 So.2d 531, 535; Mayerhofer v. Three R's Inc., 597 So.2d 151, (La.App. 3rd Cir.1992).
The record shows that Mr. Martinez became angry and impatient with Reno for a number of reasons, including the delays in construction, disagreements with the types of fixtures to be installed and the materials used, etc. He was sure that he was under stress during the building of the home at different times, and further testified that he wanted to be in the house by September 8 because his children would be in school in St. Charles Parish. After reviewing the record as a whole, we cannot say that these feelings and problems expressed by appellant rose to the level of mental anguish so as to find the trial court was manifestly erroneous in failing to award any such damages.
Appellants argue that a credit was not due to Reno on the den construction. They argue that such determination forces them to pay twice for the construction of their den, since the cost of the den was included in the 3299.5 square feet used by the trial court to calculate damages. We agree.
According to the record, the original house plans called for 3033 square feet, and the den, totaling 266.5 square feet, was added on. The total square footage was therefore 3299.5 as determined by the trial judge. The court erred in allowing Reno credit for construction of the den, which area was used in the calculation of the 3,299.5 square foot home.
For the foregoing reasons, the judgment insofar as it grants a credit of $5727.50 is reversed. In all other respects it is affirmed.
REVERSED IN PART; AFFIRMED IN PART AND RENDERED.